The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you very much. Please be seated. Good morning to everyone. Before we get started this morning, let me say Judge Floyd and I are very pleased to welcome our friend, Judge Goodwin, from the Southern District of West Virginia. Friend of ours from the court, proud to have you sit with us this morning. We already changed the order of the cases a little bit before you got in here this morning. First case is Sloan Pleasants v. Town of Louisa and Mr. Fogle. Good morning, Your Honors. Good morning. May it please the Court, my co-counsel will be handling the rebuttal part of this. I think you know that already. Imagine, if you will, a supermarket aisle and a hysterical child who's crying and grabbing cereal boxes off the shelf. We may not have to imagine that. Well, it was somewhat hyperbolic. I know. And the parent grabs the child by the wrist and administers a slap to the buttocks. According to the defendant in that case, that parent has established probable cause to be arrested for assault and battery on the child. Well, it would depend on the facts, wouldn't it? Well, I'm suggesting that under those facts, the defendant's position is that any simple assault and battery, which in the common law was any unwanted touching, constitutes the offense of assault and battery. Now, of course, we dispute that because at the same time, the common law, as well as the law in Virginia, recognized that every parent had a right to engage in moderate corporal punishment of their child. So that the common law never recognized a right to arrest a parent for moderate use of force against the child, notwithstanding the more general proposition in the common law that any unwanted touching could constitute a simple assault and battery. In fact, when he was asked at the deposition, is every time that a parent touches a child who does not want to be touched, does that form the basis of a criminal offense? His response was, it is not for me to judge. It's for me to go by the statute of assault. And apparently to ignore the longstanding, as a professor of mine used to say, the memory of man runneth not to the contrary, right of a parent to use corporal punishment on their child. Indeed, on the defendant's theory, any legal privilege or justification for the use of force is not a question for an arresting officer, but rather for a trier of fact in a criminal proceeding. Presumably there'd be probable cause to charge a parent for kidnapping as well as assault and battery if the parent carried the child against the child's will to the bedroom to go to sleep at night. What's the officer supposed to do other than try to talk to the people who've been involved in the incident and make his best judgment on that? Yes, but he has to have... I said, what else is he supposed to do? Well, before he arrests, he has to have probable cause. But to get to the question of whether or not he has probable cause, you would think it'd be a good idea if he talked to the participants? Absolutely. Did he do that in this case? He did. And so the point is you think based on the information as he had it and the information that explains about the child, because I understand your point. What does an officer do then and how much does it take? You think that what he was told just doesn't amount to giving him a probable cause to arrest based on an assault on that child? That's correct. I mean, what we're talking about here is a slap on the hand like that. And the child... Well, we don't know that now. That's not in the record. That was just what you said. Not from the record, it's not there. Well, the way the record describes it is that the parent in the vehicle, this is before they got to the house, went to slap her on the knee. The child's hand was on the knee, and so she got slapped on the hand. And thereafter, later on, some hour later, when the child said she wouldn't go take a shower and she was in a chair, the mother grabbed her by the wrist and said, you're going to take a shower, and then let her go. And that was it. That's the totality of what occurred and what was told, rather, to the officer and what he knew before he made, and then he immediately made an arrest for assault and battery of the child, handcuffed the mother right in front of her child, and took her away. And under those circumstances, it seems that we're talking about not whether or not even this is moderate use of force. This is diminished. What's the smallest incremental amount more that would have been required for probable cause in that circumstance? Well, again, the district court felt that the officer would not have known the bottom line because there was a paucity of cases, as he described it, that defined anything on this nature. But what one can see, just from looking at the cases cited by the district court, in terms of what Virginia has defined as assault and battery on a child, there's got to be some evidence of harm to the child. In most every one of the cases that were cited by the district court, you saw that there was evidence of there was bleeding, there was redness, there was bruising, in some instances a broken bone, but all of them defined some... You think the law requires some damage to the child, some physical proof, before there can be an arrest? Some measure of damage, yes, to the harm to the child. And, in fact, the officer acknowledged... Some physical measure. Yes. Well, again, I would say it may differ. If you're talking about shaking a 3-year-old, it might be different than slapping an 11-year-old, as in this case. So you would have to take into account the age in relationship to the amount of force be used. I don't question that. But in this case, he actually went, according to his testimony, and examined the child, where she said she had been hit, and saw no evidence of anything other than the child. So no evidence of bruising, no redness, no nothing. So we have really nothing here other than what I would consider to be de minimis force. I mean, I don't want to use my own experiences, but I know I and many friends of ours were subjected to much more force than this by our parents, and properly so in many of those instances. You think that explains anything? Pardon me? You think that explains anything? No, but it's hard not to react, you know, from your own experiences when you see somebody being arrested for this level of force. And, of course, the irony to me is that when the defender takes the position that any justification or privilege that's asserted as a means to justify the use of force can only be decided by a trier of fact. Now, the irony here is that Officer Rigsby himself could have been arrested that day under that theory. He certainly used force against the wishes of Mrs. Pleasance, and then he transported her against her will. On the face of it, that could be kidnapping, but we know that it's justified under the law, and we know that an officer may use that force, which is reasonably necessary, to effectuate an arrest. But if it's more than necessary, we know that that could constitute a crime. Now, under his theory, an officer should be arrested in each instance and let a jury decide whether or not the force was excessive or not. The statute kind of pushes him that way. It says, shall arrest if he believes it's probable cause. We don't have a problem with the statute. We don't necessarily like these kinds of statutes, but they're pretty tough. Well, we're not arguing about the statute. The real question we have is, was there probable cause in this instance? And we assert that the minimus use of force in this instance, any person on the street would say, any person, not just a reasonable officer who should know better, any person on the street would say, well, of course, that's the minimus use of force by a parent. When you make the argument you just made that his view is that any time there's a question that has to be decided by the jury, are you making that argument to say that, because what his argument about whether or not there's probable cause doesn't control us. Correct. But are you making an argument to say that he so misunderstands probable cause, in your opinion, that he didn't have probable cause to do what he did? I think it's evidence of the fact that he didn't have probable cause because of his misunderstanding. But I would also say that that's the position being taken legally by the defense here. The defense of corporal punishment does not negate the probable cause for making an arrest under the statute. Whether the unwanted touching amounted to reasonable and appropriate punishment is a justification that can be made by a criminal defendant and an issue that should be decided by a jury in a criminal case. Yeah, but I don't know that that's given as an absolute. We'll find out if that's an absolute. That, in other words, there could be no circumstances in which corporal punishment would lead to you not pressing charges. First, we'll ask what they say. I don't think that's their position, but maybe it is. Because it seems to me, and we all do, we read the record pretty carefully, and I look pretty closely at the discussion on just this point. When he tried to talk to the mother, she kind of tried to interject a little bit, and then apparently decided not to talk, it looks like. And then he did, he talked to the girl. I was concerned about that very point of how, in his own mind, did the officer explore corporal punishment and excessive force or enough to amount to basis for arrest. Because that's a pretty thin line right there in some circumstances. No question in some circumstances. Of course, our position is not this circumstance. This is not a gray area. I know. I was saying, I think this is thin. I know you're on the other side of that, but it's not even close. Well, I'm saying certainly in some circumstances it's going to be a gray area, and I would certainly acknowledge that in a wide variety of cases. But not this case we're talking about. That's because you make the distinction you think the law requires some kind of physical proof of injury or damage or something to the child to push it to probable cause. Well, I like to use the word evidence rather than proof. But some evidence that there's been some harm to the child, I think that's what we do. I'm using interchangeably. Okay. I think that's what we derive from the cases, and that's why I think that's the reasonable standard. Because the district court seemed to feel that, well, how would an officer know? This is what the cases are, and these cases all involve much more severe use of force. Well, there are two responses, of course. One is that nobody would bring a case like this to trial because it was so diminished. It's very odd to me, though, because what if you had an eyewitness that saw it, a slap across the face or something like that, and by the time the officer got there, there was no physical proof on that child. That could still be probable cause, couldn't it? It could be if there was a good description of how that force was used. But, again, we're not talking about a face here. Slap across the face, bam, that hard. Why couldn't that? That wouldn't require any physical damage, would it? No, I'll put an eyewitness in. I think that's a close case. I think that's a closer case. But when you're talking about slapping a hand, not a face, you're talking about an area of the body that's not so susceptible to being harmed and something that looks much more like moderation. It's the parent who grabs the child from pulling the cereal boxes off the shelf by the wrist and then administers a slap to the buttocks. Would anybody say that that's probable cause to arrest that parent? I mean, there'll be a lot of supermarkets with arrests being going on, and they'll all need private security guards in order to effectuate those arrests because it's not an uncommon occurrence. Or a child at 11 years old who's hysterical and screaming does not prove that they've been hit in any respects. There are temper tantrums. There are all kinds of things that would prompt the child. And in this particular case, you have a heated custody battle going on that would obviously result in emotional distress not only to the parents but to the child as well. Does it make any difference to you that the dispatcher told the officer that Ms. Pleasance had a history of intoxication and violence? Well, it could make a difference, but I'd like to address that point. I think it's very important. It turns out, and we were wrong in our brief, and I want to correct that, that Officer Rigsby was never told that Mrs. Pleasance was very violent. It's true that it's in the dispatch report, but when he was asked about it, and I refer the court to where it's cited on page 132 to 133, where he says, I don't recall being told that by the dispatch officer. He received a summary over the phone. He was told by Mr. Pleasance that she drinks and may possibly be intoxicated. Well, maybe that's a factor when you go there, but there was no evidence when he went there on November 1st that she was intoxicated, and there was no evidence prior to making the arrest that she was intoxicated. And, of course, he had to remember this was the estranged husband who was in a custody battle who had an interest in trying to say bad things about his wife, who, by the way, of course, we know had custody, court-ordered custody. So we know that the officer had to know that. Is there any information in this record that the husband had given incorrect information about the wife along the lines sort of you suggest? Well, he did tell the dispatcher that she was very violent, but as I said, that was never communicated to Officer Rigsby. I said is there any information he'd given incorrect information. Is that incorrect that she'd been violent? Yes. There's nothing in the record to say she was. And if I tell you it's off the record, because there's nothing in the record. I know that, but my point is that doesn't mean, was there anything in the record to indicate that that was not true? In other words, that she had not been violent. Well, except for the fact that when he went there on November 1st, there was no evidence that she'd been violent. That doesn't mean that she was violent that time. I agree. I agree. I also looked at the record pretty closely to see in a domestic case, is it the type where actually people use leverage? Is that what you're suggesting? Yes. And I do think police have to be leery of that. I suspect they are, but you certainly have to be, because it's not unusual, is it, for people to say untruths in a custody or a divorce situation, is it? No. I think that's . . . I think that the police knowingly accepted information from somebody they had reason to believe would not tell the truth. So I'm just asking. Okay. I don't think that's . . . Well, the one thing that I think was incorrect, he told the officer in the first incident, in November 1st, that his wife was throwing the daughter out. Well, when they went to the scene, the wife didn't. Mrs. Pleasant didn't want the daughter to leave. But that doesn't mean that's necessarily untrue, because it could go from, get out of my house, you're not going to be here anymore, and when the daddy shows up, she goes, you don't have anything to do with him staying in the house. I agree. That makes it an untruth. I agree. You don't seem very interested this morning in the entry into the house, and it wasn't until after he entered that he talked to the child. And I'll tell you why. You're right, because the gravamen of our case is really the arrest here. We do believe the entry was unlawful, and I think we've explained why we believe that there was not sufficient information to draw a reasonable conclusion that that child was in imminent danger of harm. But the real harm that occurred to our client was not from that step inside, although that is a constitutional harm, it was from being arrested. And so that's why the thrust of the argument has been around the arrest. He didn't really learn anything when he was standing at the door. He didn't learn anything until he actually crossed that threshold and started to interrogate the child. Now, we do not assert a Wong Sung application in the civil context here that if the entry was unlawful, therefore, anything that occurred as a result of that should be thrown out. We're not making that assertion. So these are two separate causes of action. And, again, we don't believe he had the basis to go in. Under either the entry or the arrest, why would there at a minimum be the second step of qualified immunity? Well, again, the entry, we all know what the law is. There must be exigent circumstances to enter without a warrant, and those exigent circumstances in a context like this have to be a What about as to the arrest? Well, as to the arrest, we have probable cause. We all know that in order to make an arrest, there must be probable cause. So we need to look then at what constitutes probable cause under the statute. Now, the statute doesn't define itself assault and battery. Courts have relied on the common law. But, as I said, the common law also gives the parent the right. Why doesn't that seem like that's a pretty good area for qualified immunity, I'm asking, since it may not be clear where that dividing line is. We know what the general standard is, but as to does it apply in these circumstances, if you'll give me a quick answer to that. Well, the problem with the bottom line is you can never define a bottom line. If the parent had touched the child and the child said, don't touch me, and they touched him like that, if we go by the statute . . . So you think qualified immunity always applies or never applies? No, well, I think it applies in those gray areas where a reasonable officer wouldn't be able to conclude that the use of force in this instance was de minimis, and we assert that it was. Thank you. Thank you very much. Thank you. Mr. Fisher? Good morning, Your Honors. May it please the Court. I want to start off by pointing out the procedural posture of this case because I think it's important to the way the District Court decided it. The false arrest claim was decided on a motion to dismiss, pursuant to Rule 12b-6. So as far as the facts go concerning what information the officer had about probable cause and what led to the arrest, we can only go on what the allegations and facts were in the complaint, and that's an important point because we're talking about a lot of different things concerning the arrest, but we can only go on what's in the complaint. Now, the unlawful entry claim, of course, there had been limited discovery . . . Why don't you just tell us what the facts and the record you think are that we can rely on instead of suggesting that there are some things we can't. Make your argument based on what you say is in the record, and we'll go from there. Sure. On the false arrest claim, the complaint alleges simply that after the entry occurred, the officer questioned KP, the child, and her statement was, I was slapped on my leg and across my arm and grabbed by my wrists. Can we look at the deposition testimony of what happened? As far as what happened with the officer questioning the child, I don't believe so because the limited discovery was on the entry claim and all the court was considering with respect to the false arrest claim is what was in the complaint because it was a . . . So there's no record information on what happened for the arrest? Well, there is record information on that. I don't understand. There's deposition testimony about his conversation with the child. That's not part of the record that we can look at in your opinion. With respect to the false arrest claim, that's probably true. What else is there with the false arrest? Well . . . What else is there other than he goes in and he talks to the girl for the basis to find out whether or not he can arrest the mother? What else is there? The appellant wants to make the argument that it's apparent and clear that the type of touching that was used was corporal punishment. Are you saying that it was decided on a Rule 12b-6 motion without it being converted to a Rule 56 motion based on the testimony that was taken? Well, I'm saying with respect . . . Is that your position? With respect to the unlawful entry claim, it was . . . No, no, no. With regard to the arrest case, is that how it was decided? That's what the record indicates to me because . . . Is that what you're relying on? Well, I submit that it probably doesn't matter anyway. It's based on the facts. I didn't know why you started your argument that way. The only reason you would make that argument is to suggest what I asked you, that something in the record about factual testimony may not be used. Is that your suggestion or is this a 12b-6 in which that deposition testimony about his talking to that girl may or may not be used? What's your position on that? My position is it doesn't matter one way or the other. No, that's not an answer to that. I said may it be used because I may decide it's important. You started your argument this way. Can that information be used or not in making our determination? The deposition testimony between the officer and the child, yes or no? With respect to the . . . A false arrest? No. Based on the way it was decided and what the appeal is. So in other words, and you might lose because there may not be enough evidence in the record for us to know. Well, Your Honor, the issue is . . . Your argument is what? My argument is based on the statement from the child that she was slapped on her leg, crossed her leg, and grabbed by her wrist, and that's the statement to the police officer. What do you get in that statement because you just said we can't rely on the deposition. Is that what you're taking from the allegation in the complaint? Yes, Your Honor, that's in the complaint. So you're just taking that paragraph from the complaint and saying that that is not sufficient or is sufficient. It's not sufficient to state a claim for a false arrest because you have a statement from a victim, which this court and the courts of Virginia said there's no better evidence of probable cause than a victim's statement. The statement from the child as posed in the complaint is . . . I don't want to get in an argument with you, but it's an allegation in a complaint. It's not evidence. Correct. And you are arguing that the judge correctly decided it did not state a claim. Yes, that he was entitled to qualified immunity under the facts as pled in the complaint. We don't know that, though. We don't know that. If all you have is that a child was . . . state exactly what you say we have to make the basis on, why couldn't an officer be saying that in a way that we don't know if that's probable cause or not? Because it could describe exactly the situation your counterpart has described.  The motion to dismiss is improper. You've got to develop the record because when somebody says, my mama hit me, we don't know anything about that. We don't know how hard it was. We don't know how easy it was. But you want us to decide this on just that allegation, and you say you went as a matter of law on that allegation. Are you sure you went on that allegation on probable cause? Your Honor, there is nothing in the complaint that calls into question the veracity of the statement. I know there may be a degree of the statement, may be a degree of the force, because could it be, could it, does it say the extent that she was, were there marks on her or anything like that in that allegation? Does it say she hit me, but she didn't leave a mark? There is a paragraph that says that. But as the court picked up on earlier, whether or not there's a mark does not necessarily mean that . . . That's what you may say, but if we have evidence in this record where we look at the record and see there wasn't a mark, then that's established for purposes of our determination. Under your view, I'm not so sure we get there. What is there in the complaint that shows that it was more than de minimis force? What is there in the complaint that says that? Well, let's start off with the definition of an assault on battery. No, no, no, no, no. Answer my question. What is there in the complaint that shows there's more than de minimis force? There's nothing that says that in the complaint. But the definition of an assault on battery is all that is needed is a minimal touch, unwanted touch. Your theory is if somebody's . . . if the complaint is the officer hit me, if the officer hit me just by saying there was a touching that automatically qualifies . . . every touching automatically qualifies probable cause for arrest, yes or no? That somebody hit me and I didn't want to be hit and it was an unwanted touching, then that falls within the definition of an assault on battery. Your theory is that if a police officer . . . that if somebody touches . . . if somebody touches anybody, that's probable cause for arrest. If it is . . . Unwanted touching. Unwanted touching. It is probable cause that an assault on battery . . . If we're walking down the street, I'm looking at the statehouse and I bump into you, there's probable cause to arrest me for assault on you. There's probable cause that an assault has occurred, but . . . No . . . to be arrested. Probable cause, here's a linchpin to the arrest. This is a false arrest claim. I understand. Your theory is any touching, any unwanted touching, automatically gives probable cause. That's the theory of your case and you're willing to rise or fall on that theory. Well, no, Your Honor, because a qualified immunity context, you have to look . . . There wouldn't be any qualified immunity here because you would have it established. Every touching qualifies probable cause. Your theory of probable cause is much greater than qualified immunity, second prong, isn't it? Well, the . . . The second prong, listen, isn't second prong qualified immunity that the law is not clearly established? That is correct. You say the law is clearly established, don't you? Well, I believe that the law is . . . The law is established. Every unwanted touching grants probable cause. That's what you just said. Without legal justification, that's correct. But we don't know anything about justification. All we know in this case, according to you, is an allegation of illegal touching. Well, the complaint also has allegations about what happened before . . . To make a difference . . . The prior incident . . . Do you need that? Do you need the prior incidents and what is known about that to have probable cause to arrest in this case? Well, under the second prong of analysis . . . No, listen to what I'm asking you. You said any unwanted touching is assault, probable cause. That's what you said. And then I said, well, you established that fact according to your argument. You said we have to look at what happened before. Not under your theory, you don't. Why does anything that mattered before the moment that woman touched that child in an unwanted fashion . . . Why is any of that necessary to your view of probable cause? Well, it's necessary to the question of whether or not it was clearly established that the officer wouldn't have believed . . .  . . . that he had probable . . . You said . . . I don't think you're following your own argument. You've told us that any unwanted touching is probable cause. Isn't that what you said about two, three minutes ago? It's probable cause that an assault has occurred. Well, you should . . . any time you allege an assault and battery in a complaint . . . the defendant should . . . or one party should win or lose without any development of the evidence. We don't need any evidence to decide those cases. Any evidence as to what the circumstances . . . Any evidence at all, apparently. It's the probable cause for assault. That's your view of the law. Well, again, qualified immunity is something that can be determined at the outset. Qualified immunity. Listen. Listen. What do you understand the second prong of qualified immunity to be? The second prong of qualified immunity is whether or not the officer . . . Whether a reasonable officer would know the law was clearly established. Correct. Why would you ever get to that under your theory? Maybe I'm missing something. Maybe I am. But you have said that any unwanted touching is probable cause. Why would you ever need qualified immunity in a touching case? Why would you ever need that? Well, it's not a constitutional violation in the first instance. There's probable cause. But secondly, there are other allegations in the complaint . . . I don't know what you mean by it's not a constitutional violation. That's correct. If it's not a constitutional violation, you don't get to the second step. You don't get to the second step, do you? Well, I believe you do under all of the facts that were asserted in this complaint. Not under your theory. What is your theory? Is this not your theory? I'm surprised by it. But I think your theory is, if you look at what's alleged in the complaint, that it was a touching. Correct. And you said that's enough for probable cause. The judge didn't need anything more. You win. Isn't that what you told us? Well, I believe that's one argument to make. Not one. You said that's the argument. Well, that's not what I meant to say. It is one of the arguments to make. But the second prong also applies. But you said, because you said all we want to look at is that allegation, and that allegation is alone enough for probable cause, because a touching gives you probable cause. Did I miss your argument? No, Your Honor, you didn't. I guess what I was trying to address is the fact that counsel was addressing, you know, things that Ms. Pleasance may or may not have said, and what may have gone into the determination as to probable cause. Well, you know, the problem you have is you got up and said it and made that argument. Because you may be boxed in. What do you think we can look at to decide whether or not there was probable cause in this case? I thought you told us we could look at nothing in the record other than the allegation and the complaint. I think that's what you said, and that was a linchpin for your argument. Did I misunderstand you? Well, that's the linchpin for one of my arguments. And the very definition of an assault battery is whether or not there's an unwanted touching, no matter how de minimis it is. And so the complaint where you have a victim saying that she was slapped on her leg and grabbed. So the defendant wins just because it's alleged? Well, we have to look at the statute as well, the Virginia Criminal Procedure Statute, section 19.2-81.3. That answer is taking you right to a yes. I think that's where it's taking you. We know the statute. We can look at the statute. So we know what the law is. But the question is probable cause under the facts of the case. Isn't that what probable cause is based on, the facts of the case? That's correct. And you tell us the only fact we need to know and the only fact we can look at is the allegation of fact that there was a touching. That's enough. That's what your argument you're making to us is. That's one of the arguments I was making, that there's a touching, there's no allegations or inferences that it was justified. Wait one second. That's not one of the arguments you made. That is the only argument you've made. You haven't said anything from the time you stood up there other than we are limited on the question of probable cause and false arrest to the allegation in the complaint. That's what you said. You haven't varied from that one iota. Well, I'm saying that's the first. I mean, the issue can be decided on that alone because that's the way it was pled. But also, you have the fact that it's pled. There's a child who says she was slapped and grabbed. That falls within the common law definition of an assault and battery. You have a statute, 19.2-81.3, that says that officers shall make an arrest. And so then you go to the second question under the qualified immunity analysis, whether or not the right was clearly established. And you consider that you've got a statute saying probable cause shall arrest. You're saying we can't consider and shouldn't consider under your theory of the law the facts that were developed by the depositions and the statements that we have in the record based on the depositions of what the child said. We can't consider that because we're just to consider this on the pleadings because it is your view of the record that the court dismissed this on a Rule 12b-6 motion and not having not converted it to a Rule 56 motion. With respect to the false arrest claim. But even if you look at the record, the facts are not the same. So that's a yes? They're exactly the same. Is that a yes? Are you answering his question, yes or no? Yes. But the record is no different than what's in the complaint anyways. So all you have is the officer, after he enters, asks the child what she said or what happened. The child says, as pled in the complaint, slapped on my leg, grabbed by my wrist. There's nothing in the complaint and there's nothing in the record to suggest that the touching was somehow justified. There's nothing calling to question the veracity of the statement or whether or not it was being done to correct. But what if it wasn't true? Well, that's when you go back to the record that was developed with respect to the unlawful entry claim and look at what the officer has in his mind at the time. And he's been called to this residence two times in a six-week period. Your justification for the arrest is what he knew when he came to the door. What he knew when he came to the door? Well, the information he got was after he came through the door and that's a different point. You shouldn't consider that. I'm going to stop. Well, that's what the complaint alleges. After the entry, the officer questions the child. The child says, I was grabbed and slapped. And that's also what's in the record as far as what happened. Nobody calls that into question. Again, there's no evidence that it was done to correct any sort of bad behavior. And that's where I was going with on this as far as the record goes. And that way you ended up, though. I don't think you thought about your argument. Because I believe your opening argument, based on what you said, and you may be completely right on that, but what you're saying is you're rolling the dice on this determination. I don't mean rolling the dice. Made solely on that one, whether or not that one or might be two accusations, allegations of the complaint, whether looking at that, we can say you, as a matter of law, your client had probable cause. I believe that's correct on the false arrest claim. But we stand on our brief. And nothing that we have in the brief changes the arguments that were made. And I'm not abandoning those arguments. If I can quickly address the entry, because we haven't talked about that yet. The Supreme Court, here's the law. And we don't have to get to the constitutional question. We can find out whether or not it was a clearly established right that he couldn't enter under the circumstances of the case. The law is that that question is a highly particularized question. And in this case, it's defined with particularity. The proper question is whether at the time Rigsby entered on December 13, 2009, it was clearly established that an officer called to a residence for the second time in six weeks with concerns of domestic strife and issues concerning this 11-year-old girl may not enter without a warrant in order to ensure the safety of a hysterical minor whose mother was potentially intoxicated and allegedly violent. That's what he was told. Nobody calls that into question as Your Honor picked up on in argument. And simply, the Supreme Court precedent is clear on this. In the Georgia v. Randolph case, which was a disputed consent case, but one of the concerns was if you have a co-tenant who's objecting to the police's entry and another co-tenant who wants them to come in, one of the concerns that Justice Roberts had in his dissent was what happens when you have a domestic violence situation and a wife who wants the officers to check on her and a husband that says no. So Justice Souter spends two pages discussing how in a domestic violence situation a quote would be silly to suggest that the police would commit a tort by entering to determine whether violence or a threat of violence has just occurred or is about to or soon will occur. And that's the situation we have here. The Fourth Circuit. Let me just ask a simple question. Your view of the law as you read those cases is that any police officer who's told that a child by a party to a contested divorce that the mother is treating the child poorly may, without a warrant, just run over to the house and go inside and check on that. Is that right? No, Your Honor, and we can't look at this in a vacuum. The Supreme Court has said that over and over again, most recently in the Ryburn v. Huff case last year. You have to look at what the officer knew at the time. He'd been there once before and was told. I agree with that. Okay. But the night of, the information that he has is he's been dispatched there. He's told by the father that the father missed a phone call from the child. She's trying to reach out to the father for some reason. Father calls back. He's not allowed to speak with his child who called him and is heard screaming and crying in the background. The mother hangs up on him. Then the police are contacted, asked to do a welfare check. They go to the house. Officer Rigsby goes to the house. And as soon as the door is open and the mother sees who's there, she says, you and you off my property, and she goes to close the door without allowing anybody to just check on the child and see whether or not she's okay. Because there's a concern, again, from the officer's standpoint that you have a possibly intoxicated mother, and nobody calls that into question, that that's something that was told to him, and that the mother has a history of potentially being violent. And so his ultimate concern is the safety of this child, who's become clearly a rope in this tug-of-war contest of her custody. And nobody knows why the child was screaming or crying. Enter Georgia v. Randolph. In the precedent in this circuit, he has the right to enter to try and investigate what violence has occurred. And I see my time's up. If there are other questions, you may end that. Thank you. Thank you. Mr. Rosenfield. If it pleases the Court, I will mention that Mr. Fisher's argument is actually in the record, and he's correct that of the two claims, the unlawful entry was reviewed under summary judgment. But the arrest was a 12B6, and the judge said specifically, I issued an order taking defendant's motion to dismiss under 12B6 under advisement pending the completion of limited discovery. We know what the record is. I thought the Court had expanded it by looking at other information. But I'm looking back at his order. So, in fact, there's your friend's argument that the government argues it's always a question of fact. It's not true. They say it's a matter of fact. If there's a touching, there's probable cause. That's how we interpret it as well. That's how the other side of the government, that's how the officers interpret it. Well, it's hard to get around the Carpenter case from 1947, which — I don't think you need to argue much. Okay. Well, I'm going to say, but I want you to argue on what you want to argue. No, I appreciate it. You might want to look at me when you're doing it. Yes, sir. Well, I did want — co-counsel stated it a number of ways, and if the question is what kind of a decision should you render to give guidance, perhaps, to law enforcement, and it's just — All right, well, let me state this. When something is de minimis, when there is — I'm not interested in that, quite frankly. Okay. Maybe somebody else is. Maybe Judge Floyd wants you to do that. But I want to know what you would have us do with their argument that on the false arrest, a statement that — and I can read it. Paragraph 12 of the complaint. Yes. That that alone, that she was slapped and grabbed by the wrist, that that necessarily, they accept that fact as the court did, that means there's a touching, and a touching — by the way, did it say that it was unwanted? No. So why is that making us all — Well, the point — I guess it wouldn't be an accident if it weren't. Where did I find that it was unwanted? We never — Listen to my question. Can a mom grab a child by a wrist without that being — It doesn't say anything about wanted or unwanted. But at any rate — The allegation. If we could read that in, I don't see it in there, but if we could read that into the complaint, then that leaves us with what? For the other side to win? Do you think we have to decide as a matter of law that that argument gives probable cause under those facts? We would have to, wouldn't we? Well, there's that, and it's also 12b-6, so there are facts to be developed, which — No, no, no. But just on the face of the complaint. Listen, I'm talking about 12b-6. Yes. The other side says we win, and it was a 12b-6. That may be technical. I'm looking back at it, and the point is, so their argument is we win on that allegation because that allegation creates probable cause. That fact. We think the judge erred and that that's not correct. I'm not talking about what you think. I'm talking about their argument. That is their argument. Let me finish, and then you can answer. Yes, sir. I said, but your view is you would have us decide it, the same as them, and they say they have to win if there's an allegation of a touching. It doesn't say unwanted, by the way, but an allegation of a touching that has to be, as a matter of law, probable cause, and they automatically win in each and every circumstance that that's alleged. That's their position, isn't it? Yes. And you think that is right or wrong as a matter of law? It is wrong. Because you say, as a minimum, that you'd have to go back and develop facts on that. At a minimum. At a minimum, yes. But we think the law is also well established, so that would be a secondary. And you don't think under the law, looking at the statute and everything else the other side said to look at, we just can't decide just looking at this, that this, as a matter of fact, cannot be enough. That's why they have us do. I think that . . . I mean, a footfall violation. In other words, this gives them probable cause. Why isn't that correct? You can't touch somebody. A parent can't be abusive to a child. You can't be abusive, that's correct, but you can't under Virginia law, under the Carpenter decision from 1947 . . . Probable punishment, you have some right to it. You do. And a reasonable officer . . . Do you think it's true, I'm just asking this, do you think it's likely true that under any discipline of a child that the child considers the touching to be unwanted? I think . . . Or do you think they think at that moment they're justified in getting popped? No, I think they would think it unwanted. They think they have nothing short of a constitutional entitlement, but some entitlement to have that box of cereal. That's another issue about the child's rights versus the parent's rights. Do you have anything? No, sir. Thank you. Thank you very much. Thank you. Thank you. We'll step down, read counsel, and go directly to the next case.
judges: Dennis W. Shedd, Henry F. Floyd, Joseph R. Goodwin